UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TINA BLUNDELL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | )   CIVIL NO.  1:11cv 48 |
| | ) |
| JOHN J. CALLAHAN, | ) |
| Acting Commissioner, Secretary of Health | ) |
| and Human Services, | ) |
| | ) |
|     Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act.  42 U.S.C. §416(I); 42 U.S.C. §423; 42 U.S.C. §§ 1382, 1382c(a)(3).  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law

2

Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2007.

2. The claimant has not engaged in substantial gainful activity since March 1, 2005, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: asthma, lumbar degenerative disc disease, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can stand and/or walk 2 hours of an 8 hour workday and sit for 6 hours although she must be able to sit or stand alternatively at her workstation while remaining on task; can occasionally climb ramps, stairs, ladders, ropes, scaffolds, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to vibration and all exposure to extreme cold, heat, humidity, and chemicals; and is limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements involving only simple, work-related decisions and few, if any, work place changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 12, 1965 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual

>    functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 19-25).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on July 20, 2011. On October 27, 2011, the defendant filed a memorandum in support of the Commissioner's decision, and on November 3, 2011, Plaintiff filed her reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff filed DIB and SSI applications on April 3, 2007 and March 17, 2007, respectively, alleging disability beginning March 1, 2005.  Plaintiff's DIB and SSI applications were denied initially and upon reconsideration. Plaintiff subsequently requested a hearing before an administrative law judge. Plaintiff appeared with counsel and testified at a hearing held by Administrative Law Judge Jennifer Fisher ("ALJ") on September 3, 2009. On November 3, 2009, the ALJ determined that Plaintiff was not disabled, as defined by the Act, and thus was not entitled to DIB or SSI benefits (Tr. 17-25).  The ALJ's decision became final when the Appeals Council denied Scott's request for review on September 15, 2010.

Plaintiff was 39 years old on her alleged disability onset date and was 44 years old at the time of the ALJ's decision (Tr. 24-25). She had an eighth-grade education; was enrolled in special education classes until junior high school; and had not worked since March 2005, when she had an asthma attack and was hospitalized for approximately 12 days (Tr. 36, 38).

Plaintiff testified that her breathing problems and constant back pain were the primary impairments that prevented her from working (Tr. 42, 47, 49). She stated that she took muscle relaxants and also took narcotic pain medication about twice a week (Tr. 44). Plaintiff indicated that she tried not to take narcotic pain medication because she thought it was supposed to be bad for her kidneys (Tr. 43). She also put ice on her back or sat on a heating pad (Tr. 44). Plaintiff stated that her medications helped to relieve some of the pain (Tr. 50). Plaintiff testified that one of her previous medications made her dizzy, but a new medication that she had begun taking two days earlier produced no side effects (Tr. 45).

Plaintiff testified that she had allergies and breathing difficulties when she was exposed to environmental allergens, such as strong perfumes, humidity, cats, and cleaners (Tr. 48-49, 55). She stated that she used a nebulizer at least three times daily for 30 minutes at a time (Tr. 47-48). Plaintiff indicated that the number of times she needed to use her nebulizer in an eight-hour workday varied depending on what allergens were in the room and how her breathing was on a particular day (Tr. 48-49). She also used an inhaler once in the morning and once at night (Tr. 47). Plaintiff indicated that she could lie down and put a heating pad on her back when it hurt and could use her nebulizer when she had breathing problems, and she really wanted to find a job that would work with her to allow her to do these things (Tr. 47).

Plaintiff testified that she could lift no more than 10 pounds and could lift five pounds frequently (Tr. 49-50). She indicated that she could sit for 20 to 30 minutes at a time and stand for 10 minutes at a time, and that she could stand for a total of two hours a day but would "be in misery" (Tr. 52-54). She stated that she could walk one block before she became short of breath or had back pain (Tr. 54-55). Plaintiff testified that she had to lie down 10 times daily for 10 to 15 minutes at a time (Tr. 53). She stated that she could tend to her personal care, shop for groceries, and sometimes cook and clean (Tr. 52). She indicated that she could not drive due to a DUI, but attended church when she had transportation (Tr. 52, 58-59). Plaintiff testified that she could not read or write very well, but could, however, read a newspaper (Tr. 38).

On August 11, 2004, Plaintiff underwent a pulmonary function test that showed moderate obstruction and low vital capacity (Tr. 300). But Plaintiff showed very poor effort and poor technique during the test and did not want to repeat it that day (Tr. 300).

An August 2004 X-ray of Plaintiff's lower back showed a few small degenerative bone

6

spurs (Tr. 299).

In October 2005, Plaintiff went to the E/R with complaints of a cough and rib pain (Tr. 320). She was prescribed an inhaler, a prednisone taper, and Vicodin for pain, and was told to stop smoking (Tr. 320-27).

On May 21, 2006, consulting physician Dr. Bret Bielawski examined Plaintiff (Tr. 342-45). Plaintiff indicated that she could sit or stand for 20 minutes at a time and walk five to 10 minutes at a time, but she was independent in her activities of daily living (Tr. 343). She also reported that she used her nebulizer three times one day earlier and that this was not uncommon (Tr. 343). Plaintiff indicated that her asthma symptoms worsened when she was exposed to extreme temperatures and dust (Tr. 343). She reported that she avoided long walks and no longer walked her dogs (Tr. 343). Dr. Bielawski observed that Plaintiff had weak motor strength in her lower extremities and a positive straight leg raising test in the right leg that caused some stretching sensation in the left leg, but full range of motion in all joints and intact sensation and reflexes (Tr. 344-45). Plaintiff also could not squat all the way to the floor and had moderate difficulty getting on and off the examining table and heel-toe walking, but walked with a small stepped gait without an assistive device (Tr. 344).

Dr. Bielawski opined that Plaintiff's obesity seemed to be a problem, especially centripetal obesity (Tr. 344). Dr. Bielawski opined that Plaintiff's lower back pain appeared to be right lumbar radiculopathy and that she would benefit from further investigation, including at least an X-ray if not an MRI or EMG (Tr. 345). Regarding Plaintiff's asthma, he observed that she had bilateral wheezing, but no shortness of breath during conversation or in performing musculoskeletal tasks (Tr. 343). Dr. Bielawski reported that Plaintiff smoked five cigarettes daily

for the last 20 years (Tr. 343-45). He indicated that she was taking the proper medications and that a pulmonary function test would be appropriate (Tr. 345).

In June 2006, state agency reviewing single decision maker Monica Dhladhla opined that Plaintiff could perform light work; could occasionally perform all postural activities; and should avoid concentrated exposure to extreme cold, humidity, vibration, fumes, odors, dusts, gases, and poor ventilation (Tr. 368-80). Ms. Dhladhla cited Dr. Bielawski's opinion (Tr. 370).

An August 2006 chest X-ray showed no acute pulmonary (lung) process (Tr. 497). A CT scan showed clear lungs with no evidence of a pulmonary embolism (Tr. 408).

On November 21, 2006, Plaintiff went to the E/R with complaints of increased shortness of breath and wheezing (Tr. 435-484). She was diagnosed with musculoskeletal chest pain, acute asthma exacerbation, moderate persistent asthma, COPD, chronic bronchitis, and acute respiratory failure; treated with an Albuterol inhaler; and admitted for observation (Tr. 438-51). It was noted that she smoked one pack of cigarettes daily for the last 30 years (Tr. 444). She had a negative stress echocardiogram test with no chest pain or arrhythmia (Tr. 449, 452, 461-63). Plaintiff reported that her chest pain was relieved with over-the-counter medications (Tr. 451). An attending physician reported that Plaintiff had been poorly compliant with asthma medications for the previous few weeks due to lack of insurance and an inability to get her medications (Tr. 451). At discharge five days later, she was given four asthma medications, an allergy medication, Wellbutrin (an anti-depressant), and a nicotine patch, and she was instructed to engage in activity as tolerated and to follow a COPD diet (Tr. 453).

In May 2007, Plaintiff underwent pulmonary function tests that showed she had a moderate obstruction (Tr. 395-96).

On July 9, 2007, consulting physician Dr. R. Scott Lazzara examined Plaintiff (Tr. 419-21). Plaintiff reported that she did not take anything for her back pain and did not use an assistive device (Tr. 419). She also reported that she had allergies to dust pollen, that the winter and summer worsened her asthma symptoms, that she had nocturnal shortness of breath, and that she had a twenty-five year history of smoking up to one pack of cigarettes daily (Tr. 419). She reportedly drove and did crafts occasionally, performed light housework, read, and played with her grandchildren (Tr. 419). Plaintiff indicated that she could lift 10 pounds, sit or stand for 30 minutes, and walk one block before becoming fatigued (Tr. 419).

Dr. Lazzara observed that Plaintiff had scoliosis and mild difficulty squatting and hopping, but normal gait, motor strength, range of motion, sensation and reflexes (Tr. 420-21). Dr. Lazzara diagnosed Plaintiff with scoliosis and recommended that she lose weight (Tr. 421). Dr. Lazzara also noted that an X-ray of Plaintiff's lower back showed some mild degenerative arthritis (Tr. 421). He opined that much of her complaints of back pain appeared to be myofascial and ligamentous with no evidence of neuropathy or myopathy (Tr. 421). Dr. Lazzara also reported that Plaintiff had intermittent exacerbations of her moderate persistent asthmatic condition, requiring hospitalization, but did not appear to be short of breath (Tr. 421). He opined that Plaintiff's current medication regime appeared to be keeping her asthma relatively stable and that a spirometry might be helpful (Tr. 421).

In August 2007, state agency reviewing physician Dr. Russell Holmes opined that Plaintiff could perform light work; could occasionally climb, stoop, and crouch; frequently perform all other postural activities; and should avoid concentrated exposure to extreme cold and heat, humidity, vibration, fumes, odors, dusts, gases, and poor ventilation (Tr. 427). He cited the

results of Drs. Lazzara's and Bielawski's exams, Plaintiff's November 2006 hospitalization, her May 2007 pulmonary function test showing moderate obstruction, and her heavy smoking (Tr. 425, 428).

A February 2008 X-ray of Plaintiff's lower back was unremarkable (Tr. 698). A chest Xray was normal (Tr. 698).

The ALJ asked the VE what work was available for someone with Plaintiff's profile who: could lift or carry 10 pounds occasionally and a negligible amount of weight frequently; could stand for a total of two hours; could sit for a total of six hours; required an opportunity to switch positions, provided it did not render her off task; could occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, scaffolding, ramps, or stairs; should avoid all exposure to extreme cold, heat, and humidity, as well as pulmonary irritants in poorly ventilated areas and chemicals; and should avoid concentrated exposure to excessive vibration (Tr. 71-74). In addition, that person could perform simple, routine, repetitive work that would be free of fast-paced production requirements and involve only simple, work-related decisions and few, if any, changes in the work setting to account for her moderate limitations in performing detailed tasks, in sustaining attention for extended periods, and in dealing with change in the work setting (Tr. 71-74).

The VE testified that such a person could perform the sedentary, unskilled jobs of sorter (20,000 state jobs); final assembler (11,000 state jobs); and spotter (30,000 state jobs) (Tr. 74-76). The VE testified that this person would be precluded from all full-time work if she also needed to use a nebulizer three to five times a day for 30 minutes at a time and to lie down to ease back pain (Tr. 76-78).

Plaintiff is now seeking to have the ALJ's decision reversed. Plaintiff bases her case on

the VE's testimony that a person would be precluded from all full-time work if she needed to use a nebulizer three to five times a day for 30 minutes at a time and to lie down to ease back pain. However, the ALJ did not find the Plaintiff's complaints regarding the severity of her breathing problems to be credible. As part of her RFC determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC finding (Tr. 22). In so finding, the ALJ considered the record evidence as a whole and applied it to the factors set forth in the regulations and SSR 96-7p (Tr. 21-24). See 20 C.F.R. § 404.1529(a)-(c) and SSR 96-7p.

The ALJ considered Plaintiff's subjective statements at her hearing, including her testimony that her breathing and back problems were her main impairments and that she had allergies and difficulty breathing when exposed to environmental allergens (Tr. 21-22). In addition, she considered her own observations of Plaintiff's demeanor at her hearing (Tr. 24). She also considered Plaintiff's counsel's argument at hearing that she was unable to work competitively because she needed to use a nebulizer and lie down throughout the day (Tr. 21-22). The ALJ considered the mild objective medical evidence and exam findings, including a chest X-ray showing no acute pulmonary process; Plaintiff's poor effort and technique during a pulmonary function test and her refusal to retake it; and Dr. Bielawski's observations that Plaintiff had bilateral wheeze during her exam, but no shortness of breath during conversation or performing musculoskeletal tasks (Tr. 22). She also noted that Dr. Lazzara reported that Plaintiff had intermittent exacerbations of her moderate persistent asthmatic condition, which had required

a prior hospitalization (Tr. 23). Finally, she considered various medical sources' reports that Plaintiff smoked and was advised to quit smoking (Tr. 22-23). Medical sources reported that Plaintiff smoked from five cigarettes to one pack of cigarettes daily for the last 20 to 30 years (Tr. 343-45, 444).

The ALJ also considered the medical opinions of record, but gave them little weight because the physicians did not have the benefit of Plaintiff's testimony or updated medical records (Tr. 23-24). Indeed, the ALJ's RFC finding limiting Plaintiff to sedentary work with, among other things, a sit/stand option, occasional performance of all postural activities, no concentrated exposure to vibration, and no exposure at all to extreme cold and heat, humidity, and chemicals is more restrictive than the August 2007 opinion of state agency reviewing physician Dr. Russell Holmes (Tr. 21). He opined that Plaintiff could perform light work; could occasionally climb, stoop, and crouch; frequently perform all other postural activities; and should avoid concentrated exposure to extreme cold and heat, humidity, vibration, fumes, odors, dusts, gases, and poor ventilation (Tr. 427).

Finally, the ALJ considered Plaintiff's activities of daily living, including her testimony that she could tend to her personal care, shop for groceries, sometimes cook and clean, and attended church when she had transportation (Tr. 21-22).

Notably, "[w]hile the law requires an ALJ to weigh all credible evidence and make unbiased factual findings, it does not compel the ALJ to accept wholly the claimant's perception of disability." See Cass v. Shalala, 8 F.3d 552, 555 (7th Cir. 1993). Here, although she did not find Plaintiff entirely credible, the ALJ did not doubt that she experienced pain and breathing difficulties (Tr. 21-24). And she clearly factored this into her RFC assessment by limiting

Plaintiff to sedentary work with a litany of additional limitations, including no exposure to extreme cold and heat, humidity, and chemicals (Tr. 21-24).

The ALJ's detailed credibility finding was, therefore, in accordance with 20 C.F.R. § 404.1529 and SSR 96-7p. Substantial evidence supports this finding, and thus the decision must be affirmed.

The court notes that Plaintiff claims that the ALJ committed reversible error at Step Five because she did not mention the third hypothetical question and did not state why she disregarded it (Brf. at 4-6). But Plaintiff does not cite a single authority in support of her argument, and her argument misses the point.

Plaintiff ignores that the hypothetical question an ALJ poses to a VE need only set forth the plaintiff's limitations and abilities to the extent they are supported by the record medical evidence. Herron v. Shalala, 19 F.3d 329, 337 (7th Cir. 1994); Ehrhart v. Sec'y of Health & Human Servs., 969 F.2d 534, 540 (7th Cir. 1992). Here, the ALJ's hypothetical question reflected her RFC finding, which, as noted above, accommodated the limitations she found to be fully credible and supported by the medical evidence, and substantial evidence supports her RFC finding (Tr. 16-21, 42-44). See Schmidt v. Astrue, 496 F.3d 833, 846 (7th Cir. 2007) (An ALJ is "required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible."). Because the ALJ's hypothetical question to the VE accurately identified the limitations credibly supported by the record, the VE's response provided substantial evidence supporting the ALJ's decision. See Schmidt v. Astrue, 496 F.3d 833, 846 (7th Cir. 2007) (finding that the VE's response to an appropriate hypothetical question constituted substantial evidence in support of the ALJ's decision). Accordingly, the ALJ's decision will be affirmed.

## Conclusion

On the basis of the foregoing the decision of the ALJ is hereby AFFIRMED.

Entered: December 12, 2011.

                                              s/ William C. Lee
                                              William C. Lee, Judge
                                              United States District Court